State of KANSAS, ex rel., Carla
J. STOVALL, Attorney
General, Plaintiff,

v.

HOME CABLE INCORPORATED, d/b/a
Home Cable Concepts, Defendant.

No. 97–4108–SAC.

United States District Court,
D. Kansas.

Aug. 11, 1998.

Terry A. Iles, Office of Attorney General, Topeka, KS, Carla J. Stovall, Kansas Attorney General, Topeka, KS, for State of Kansas, plaintiff.

---

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Rex A Wolfgang, Barron, Peck & Bennie, Cincinnati, OH, for Home Cable Incorporated, dba Home Cable Concepts, defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On May 14, 1997, the State of Kansas, *ex rel.*, Carla J. Stovall, Attorney General, filed a petition in the District Court of Shawnee County, Kansas, against Home Cable Incorporated, d/b/a Home Cable Concepts (HCC). The petition essentially alleges that the HCC, a corporation organized under the laws of the State of Ohio, has committed deceptive acts and practices in violation of the Kansas Consumer Protection Act (KCPA), K.S.A. 50–626(a) and (b). Specifically, the petition alleges that HCC's representatives materially misrepresented the quality of its television satellite systems, the consumer's ability to view and/or the costs associated with viewing certain programs (like Kansas City Chiefs' football games) and/or "premium" channels when using the system, and the costs of maintaining or upgrading the system. The petition also alleges certain other unconscionable and deceptive acts.

On June 2, 1997, HCC filed a petition for removal pursuant to 28 U.S.C. § 1441. The petition alleges that "[j]urisdiction is proper pursuant to 28 U.S.C. § 1332(a) and (c) [diversity of citizenship]".

This case comes before the court upon the State of Kansas' "Motion to Remand for Lack of Subject Matter Jurisdiction" (Dk.6). In that motion, the State of Kansas argues that this case must be remanded to state court. First, the State of Kansas argues that it is not a "citizen" for purposes of diversity of citizenship, and therefore diversity jurisdiction cannot exist. Second, the State of Kansas argues that HCC has failed to show in its petition for removal that the amount in

controversy exceeds the statutory minimum.[1] Finally, and apparently in the alternative, the State of Kansas argues that it is entitled to Eleventh Amendment immunity and therefore it cannot be sued in federal court— necessarily requiring remand of this case to state court.

In its spartan five page response brief, HCC argues that the State of Kansas is not a party to this case. Instead, HCC contends that Carla J. Stovall, the Attorney General, is the plaintiff and is bringing it on behalf of seventeen Kansas citizens believing themselves aggrieved and therefore diversity does exist. HCC does not respond to the State of Kansas' contention that the requisite amount in controversy is not implicated in this case. HCC does argue, however, that the plaintiff is attempting to regulate an area it contends is preempted by the Telecommunications Act of 1996—satellite transmissions systems. "Therefore, if Plaintiff is claiming that the real basis of her action is to prevent ongoing or future violations of the Kansas statute, then we are stuck with the realization that there is a substantial federal question, i.e., the preemption of a Federal law over the Kansas Consumer Statute." Defendant's "Memorandum in Opposition to Plaintiffs' Motion to Remand" (Dk.8).

The State of Kansas replies, arguing that the state is the real party interest in this action under the Kansas Consumer Protection Act (KCPA) and therefore diversity does not exist. As to HCC's contention that this case involves a federal question, the State of Kansas argues that under the "well plead complaint rule" the defendant's federal question defense does not confer jurisdiction. The State of Kansas also contends that this case does not fall within the "complete preemption doctrine" exception to the well plead complaint rule as the KCPA is not preempted by the Telecommunications Act of 1996.

1. The State of Kansas specifically argues that the defendant "failed to show this Court where requisite amount in controversy will exceed $50,-000." The State of Kansas is apparently unaware that "[t]he Federal Courts Improvement Act of 1996 amended 28 U.S.C .A. § 1332(a) and (b) by increasing the amount in controversy for diversity cases to $75,000. This revised amount in controversy requirement applies to all cases filed on or after January 17, 1997." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 at 163–64 (1998 Supp.).

## Legal Standards Governing Removal

" 'Removal statutes are strictly construed to limit the federal court's authority to that expressly provided by Congress and to protect the states' judicial powers.' " *First Nat. Bank & Trust Co. v. Nicholas,* 768 F.Supp. 788, 790 (D.Kan.1991) (*quoting Cohen v. Hoard,* 696 F.Supp. 564, 565 (D.Kan.1988)). "The burden of showing the propriety of removal always rests with the removing party." *Id.* All doubts about the propriety of removal are resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co., Inc.,* 683 F.2d 331, 333 (10th Cir.1982).

Federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist. 28 U.S.C. § 1332; *see Carden v. Arkoma Associates,* 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) ("Since its enactment, [the Supreme Court] has interpreted the diversity statute to require 'complete diversity' of citizenship."); *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed 435 (1806); *State Farm Mutual Automobile Ins. Co. v. Narvaez,* 149 F.3d 1269 (10th Cir.1998) (sua sponte dismissing case for lack of diversity jurisdiction when amount in controversy was exactly $50,000 and therefore did not exceed the requisite amount in controversy of $50,000). "Since an action is not removable from a state to federal court unless it might have been brought originally in a federal court, the basic principles of diversity jurisdiction, such as the requirement of complete diversity between plaintiffs and defendants and the amount in controversy requirement are fully applicable to Section 1441(b)." 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3723 at p. 306–307 (1985).

"This jurisdictional prerequisite to removal is an absolute, non-waivable requirement." *Brown v. Francis,* 75 F.3d 860, 864 (3rd Cir.1996).

" 'A court lacking jurisdiction ... must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.' " *Tuck v. United Services Auto. Ass'n,* 859 F.2d 842, 844

(10th Cir.1988) (*quoting Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings. *See Ins. Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

*Laughlin v. Kmart Corp.,* 50 F.3d 871 (10th Cir.), *cert denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995).

## Diversity of Citizenship

█ The State of Kansas is not a "citizen" for purposes of diversity jurisdiction. "More than one hundred years ago, the United States Supreme Court ruled that a state cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction in federal court." *Brown,* 75 F.3d at 865 (*citing Postal Telegraph Cable Co. v. State of Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894)). *See Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); *Gable v. Commonwealth of Pennsylvania,* 521 F.Supp. 43, 43–44 (E.D.Pa.1981) ("The rule that a state is not a 'citizen' for diversity purposes is a long-standing one; it enjoys a history of acceptance, which remains undiluted by the passage of time.") (citations omitted). Consequently, if the State of Kansas is the real party interest bringing this action then diversity jurisdiction cannot exist.

█ In *State ex rel. Stephan v. Brotherhood Bank and Trust Co.,* 8 Kan.App.2d 57, Syl. ¶ 5, 649 P.2d 419 (1982), *rev. denied,* 232 Kan. 876 (1982), the Kansas Court of Appeals that "[i]n an action brought by the attorney general to enforce the provisions of the Kansas Consumer Protection Act (KCPA), the State is a real party in interest and not just a nominal party." In this case the State of Kansas is the plaintiff and brings this action to seek redress for alleged violations of the KCPA. The fact that one of the remedies sought by the State of Kansas is restitution to the allegedly aggrieved Kansas consumers

does not transform the State of Kansas into a "citizen" for purposes of establishing diversity jurisdiction. *Cf. Brotherhood Bank*, 8 Kan.App.2d at 61–62, 649 P.2d 419 ("[T]he availability of various remedies, one of which would recompense an aggrieved consumer, does not necessarily diminish the authority or interest of the State in prosecuting the action.").

In short, HCC has not carried its burden of demonstrating that diversity of citizenship exists in this case. This court therefore lacks jurisdiction to consider this case on that basis alone.

### Amount in Controversy

"Both the requisite amount in controversy and the existence of diversity must be affirmatively established on the face of either the petition or the removal notice." *Laughlin*, 50 F.3d at 873.

■ As noted above, HCC does not respond to the State of Kansas' argument that the requisite amount is not in controversy. The requisite amount in controversy is not established by either the plaintiff's petition or the defendant's removal notice. Consequently, diversity jurisdiction cannot exist for this reason as well. This case must therefore be remanded to state court. *See Laughlin*, 50 F.3d at 873–74.

### Federal Question and Preemption[2]

Federal district courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331;

*see also* 28 U.S.C. § 1441(b). The Supreme court has

long held that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). A defense is not part of a plaintiff's properly pleaded statement of his or her claim. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ("To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."). Thus, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).

Allied as an "independent corollary" to the well-pleaded complaint rule is the further principle that "a plaintiff may not

---

2. The removal petition must set forth "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). HCC's notice of removal only states diversity jurisdiction as a basis for removal. HCC did not seek to amend its removal petition within the thirty-day period set forth in 28 U.S.C. § 1446(b), nor for that matter has it expressly sought to amend its petition even at this late date. *See* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3733 at 537–38 (2d ed. 1985) ("The petition may be amended freely prior to the expiration of the 30–day period for seeking removal. Thereafter, however, the cases indicate that the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds may not be added

and missing allegations may not be furnished.") (footnotes omitted),

. Had HCC affirmatively sought to amend its petition at this point in time, the court would have required it to demonstrate that it is procedurally appropriate to do so. *See Smiley v. Citibank (South Dakota), N.A.*, 863 F.Supp. 1156, 1159 (C.D.Cal.1993) ("When defendants attempt to assert totally new grounds for removal or 'to create jurisdiction where none existed', however, the courts uniformly deny leave to amend.") (citation omitted). Assuming HCC could overcome that procedural hurdle, the court nevertheless remains convinced that the plaintiff's petition does not present a federal question. Therefore any request by HCC to amend its removal petition would be denied on the basis of futility.

defeat removal by omitting to plead necessary federal questions." *Id.*, at 22, 103 S.Ct., at 2853. If a court concludes that a plaintiff has "artfully pleaded" claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. *See Metropolitan Life Ins. Co.*, 481 U.S., at 65–66, 107 S.Ct., at 1547–1548 (upholding removal based on the preemptive effect of S 502(a)(1)(B) of the Employee Retirement Income Security Act); *Avco Corp. v. Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (upholding removal based on the preemptive effect of § 301 of the Labor Management Relations Act).

Although federal preemption is ordinarily a defense, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S., at 393, 107 S.Ct., at 2430.

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). *See Corporate Housing Systems, Inc. v. Cable & Wireless, Inc.*, 12 F.Supp. 688 (N.D.Ohio 1998) ("An important corollary to the well-pleaded complaint rule is that Congress may completely preempt a particular area of law so that any state court complaint raising this select group of claims is deemed to be federal in nature and, therefore, removable to federal court. *Metropolitan Life*, 481 U.S. at 64–66, 107 S.Ct. 1542. Complete preemption of state law exists where Congress has 'clearly manifested an intent to make causes of action ... removable to federal court.' " *Id.* at 66, 107 S.Ct. 1542.).

## Preemption

[S]tate law is pre-empted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in three circumstances. First, Congress can define explicitly the extent to which its enactments pre-empt state law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95–98, 103 S.Ct. 2890, 2898–2900, 77 L.Ed.2d 490 (1983). Pre-emption fundamentally is a question of congressional intent, *see Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988), and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Although this Court has not hesitated to draw an inference of field preemption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' " *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), *quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S., at 230, 67 S.Ct., at 1152.

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, *see, e.g., Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also Maryland v.*

*Louisiana,* 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981).

*English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (footnote omitted).

## Analysis

■ HCC's effort to demonstrate federal preemption of the KCPA falls decidedly short of the court's briefing expectations. Stapling a copy of the Federal Communications' seventy-four page publication titled FCC–96–328, **Report and Order, Memorandum Opinion and Order, and Further Notice or Proposed Rulemaking** and simply asserting that those federal regulations preempt state consumer protection laws regarding the purchase of the defendant's satellite equipment hardly satisfies the defendant's burden of demonstrating that this case is properly removed to federal court on the basis of federal question jurisdiction. Moreover, the specific issue ostensibly[3] raised by HCC is apparently one of first impression. In fact, this court could find no case, state or federal, available on Westlaw which even contains a citation to this regulation.

The federal regulation relied upon by HCC in support of its preemption argument is apparently 47 C.F.R. § 1.4000. That regulation was formulated by the Federal Communications Commission as directed by Congress in Section 207 of the Telecommunications Act of 1996. Highly summarized, § 1.4000 is intended to preempt state zoning or land use laws or regulations that impair the installation, maintenance or use of an antenna designed to receive direct broadcast satellite service. On its face this regulation does not appear to preempt state causes of action for fraud, misrepresentation or unconscionable business practices. For that matter, § 1.4000 expressly recognizes that state laws imposing restrictions prohibited by § 1.4000(a) may be permitted if:

(1) It is necessary to accomplish a clearly defined safety objective that is either stated in the text, preamble or legislative history of the restriction or described as applying to that restriction in a document that is readily available to antenna users, and would be applied to the extent practicable in a non-discriminatory manner to other appurtenances, devices, or fixtures that are comparable in size, weight and appearance to these antennas and to which local regulation would normally apply; or

(2) It is necessary to preserve an historic district listed or eligible for listing in the National Register of Historic Places, as set forth in the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470a, and imposes no greater restrictions on antennas covered by this rule than are imposed on the installation, maintenance or use of other modern appurtenances, devices or fixtures that are comparable in size, weight, and appearance to these antennas; and

(3) It is no more burdensome to affected antenna users than is necessary to achieve the objectives described above.

Section 1.4000(b). In light of these provisions, complete federal preemption would seemingly be impossible on its face. In short, this court does not believe that § 1.4000 preempts the KCPA.

In sum, the court finds that HCC's complete preemption argument fails. The plaintiff's petition does not present a federal question, nor is the court persuaded that the plaintiff has purposefully attempted to avoid this court's jurisdiction by asserting only state law claims. This court lacks both diversity and federal question jurisdiction and therefore this case must be remanded to state court.

## Eleventh Amendment Immunity

In light of its conclusion that diversity of citizenship does not exist because the State of Kansas is not a citizen for purposes of diversity and because the requisite amount in controversy is not established from the face of the petition or the notice of removal, it is unnecessary for the court to reach the State's alternative argument that the Eleventh Amendment bars this suit premised on

---

3. Based upon the paucity of HCC's brief, it does not endeavor to actually elaborate on its preemption argument.

diversity jurisdiction. Nevertheless, the State's alternative argument posits an analytic conundrum and an incorrect statement of law worthy of brief comment.

In this case, it is analytically impossible for the court to reach the State of Kansas' Eleventh Amendment immunity argument. The defendant's sole stated basis for removal in this case was diversity jurisdiction. Because it is well settled that states are not citizens for purposes of diversity jurisdiction, diversity jurisdiction cannot be established in this case. Therefore this case must be remanded to state court on the basis of lack of jurisdiction. Restated, because the court has found that diversity jurisdiction does not exist it is logically impossible to also reach the specific Eleventh Amendment immunity issue posited by the State of Kansas as an alternative basis for remand in this case.

In any event, the State of Kansas' contention that there is no circumstance in which suits brought by a state, *i.e.*, actions in which the state is the plaintiff, can be removed to federal court without running aground on the Eleventh Amendment is incorrect as a matter of law:

> It has long been the case that suits brought by a state against parties who are not other states may "be brought in or removed to the [District Courts] ..." *Illinois v. City of Milwaukee*, 406 U.S. 91, 101, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) *quoting Ames v. Kansas*, 111 U.S. 449, 470, 4 S.Ct. 437, 447, 28 L.Ed. 482 (1884). *See also State of New York v. Citibank, N.A.*, 537 F.Supp. 1192, 1197 (S.D.N.Y.1982). The Eleventh Amendment does not bar removal of an action involving a federal question in which a state is the plaintiff.

*St. of Vermont v. Oncor Communications, Inc.*, 166 F.R.D. 313, 321 (D.Vt.1996).

IT IS THEREFORE ORDERED that the State of Kansas' "Motion to Remand for Lack of Subject Matter Jurisdiction" (Dk.6) is granted. This case is remanded to the District Court of Shawnee, County, Kansas. The clerk of this court shall immediately mail a certified copy of this order of remand to the state court.